NOT FOR PUBLICATION (Doc. Nos. 5, 26)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| EDWARD D. TORRES, | : | |
| Plaintiff, | : | Civil No. 11-6190 (RBK/KMW) |
| v. | : | **OPINION** |
| SARA DAVIS, CAMDEN BOARD OF EDUCATION, et al., | : | |
| Defendants. | : | |

**KUGLER**, United States District Judge:

The present case involves the Section 1983 claims of Plaintiff Edward D. Torres, a resident of Camden, NJ, for violation of his constitutional rights to freedom of religion and equal protection.  Plaintiff brings his claims against Sara Davis, a member of the Camden Board of Education; Dana Redd, Mayor of Camden; the Camden Board of Education; the Commissioner of the New Jersey Board of Education; and the Office of the Attorney General of New Jersey (collectively, "Defendants").  Plaintiff claims that Defendants have violated Plaintiff's constitutional rights by failing to include referendum questions regarding proposed religious educational content in a special election ballot form.  Defendants have moved to dismiss Plaintiff's claims.  For the reasons discussed below, the Court grants Defendants' motions and dismisses Plaintiff's Complaint.

I.     BACKGROUND

Over the past decade, Plaintiff has in most school years sponsored a petition before the Camden Board of Education that requested inclusion of certain referendum questions in a special election ballot to be presented to the people of the city of Camden. See Compl. at 1-2. Specifically, Plaintiff requested that the following three questions be included in the ballot:

1) Do you as a resident of Camden and a citizen of New Jersey want your Public Schools to open the daily session in prayer in a pledge of allegiance to the god we trust by the children in acknowledgment of God and His son Jesus Christ. The Prayer given to us by His Son Jesus Christ the "Our Father Which art in Heaven hollowed [sic] be Thy Name." Yes or No

2) Do you as a resident of Camden and a citizen of New Jersey want a Holy Bible based curriculum in your Public Schools which teaches the truth and the presence of God as creator in alignment with our New Jersey State Constitution where we are Grateful to Almighty God and looking towards Him for a blessing unimpaired in the endeavor to properly educate our children. Yes or No

3) Do you as a resident of Camden and citizen of New Jersey want those fellow Camden, NJ residents who are on probation, or parole, or incarcerated for non violent offenses their civil right to vote in Camden School District Elections as a part of the rehabilitation process. Yes or No

Comm. of Ed. Decision at 1-2.

The Camden Board of Education (the "Camden Board") repeatedly denied Plaintiff's requests, reasoning that the Camden Board did not have jurisdiction to include such questions on a school election ballot, and that the inclusion of such questions on a school elections ballot would violate the United States Constitution. Id. at 2. In 2005, Plaintiff appealed the Camden Board's decision to the New Jersey State Board of Education (the "State Board"), who then remanded the matter to the New Jersey Commissioner of Education (the "Commissioner"). The Commissioner, in a December 21, 2005 Opinion, affirmed the decision of the Camden Board and dismissed Plaintiff's petition. Id. at 3. However, in subsequent years Plaintiff continued to petition the Camden Board and again appealed the Board's denial in 2010. The Commissioner

again affirmed the decision of the Camden Board and dismissed Plaintiff's petition. Commissioner's Mot. to Dismiss Br. at 3. On November 20, 2011, Plaintiff filed the instant Complaint. In lieu of an answer, Defendants moved to dismiss Plaintiff's Complaint.

## II.     STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

To make this determination, a three-part analysis is needed. Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Id. (quoting Iqbal, 129 S. Ct. at 1947). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. (quoting Iqbal, 129 S. Ct. at 1950). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. (quoting Iqbal, 129 S. Ct. at 1950). This plausibility determination is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1949. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. Id.

## III. DISCUSSION

Plaintiff argues that the Camden Board's refusal to include Plaintiff's requested referendum questions in a special election ballot violated Plaintiff's federal and New Jersey state constitutional rights to freedom of religion and equal protection. Defendants argue they have no authority to include such questions in a special election ballot, and that inclusion of such questions would violate the federal and state constitutional rights of the people of Camden and the establishment clause of the United States Constitution. Because the Court finds Defendants reasons for noninclusion of the referendum questions to be compelling, the Court grants Defendants' motions to dismiss Plaintiff's Complaint.

### A. Jurisdiction and Authority of the Camden Board of Education

The Court first considers the Camden Board's defense that they have no authority to post referendum questions in a special election ballot. Camden Board Mot. to Dismiss at 11. The Board's defense is based on the fact that the Camden City Public School District is a Type I school district. The Court notes that under N.J.S.A. § 18A:12-7, the board members of Type I school districts are appointed by the mayor of the respective municipality for a term of years. Accordingly, the Court finds that because there are no school board elections or ballots, there is no mechanism for the Camden Board of Education to pose Plaintiff's requested questions. The Court further finds that any decision to pass a resolution for the proposed referendum questions to be printed on a special ballot is a discretionary matter to be decided by the governing body of the City of Camden. See N.J. Stat. Ann. 19:37-1; 19:37-1.1.[1] Here, Plaintiff has presented no

---

[1] N.J.S.A. 19:37-1 provides in relevant part: When the governing body of any municipality or of any county desires to ascertain the sentiment of the legal voters of the municipality or county upon any question or policy pertaining to the government or internal affairs thereof . . . the governing body may adopt at any regular meeting an ordinance or a resolution requesting the clerk of the county to print upon the official ballots to be used at the next ensuing general election a certain proposition to be formulated and expressed in the ordinance or resolution in concise form. N.J. Stat. Ann. § 19:37-1 (West).

evidence that a decision not to pass such a resolution was made arbitrarily or for an improper purpose.  Furthermore, as described below, the Court finds that Defendants do not have the authority to pose the proposed referendum questions because to do so would violate the establishment clause.

With respect to Plaintiff's third proposed referendum question, the Court finds that the Camden Board properly concluded that it did not have jurisdiction to post such a question in a special ballot.  Plaintiff's third proposed question concerns matters outside the scope of public education, and seems to be directed to the rehabilitation of prisoners and the voting rights of prisoners.  As the Camden Board of Education's mission is pedagogical in nature, and has nothing to do with criminal enforcement or rehabilitation, the Board properly concluded that it lacked jurisdiction to even entertain the possibility of posting Plaintiff's third referendum question.  Therefore, the Court grants Defendants' motions to dismiss.

### B. Plaintiff's Freedom of Religion Claim

The First Amendment of the United States Constitution provides that "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof." U.S. Const. amend. I.  The Supreme Court has applied the First Amendment to the States through the Fourteenth Amendment.  See Cantwell v. Connecticut, 310 U.S. 296, 303-05 (1940). Plaintiff alleges that his right to the free exercise of his religion was violated when the Camden Board failed to post his desired referendum questions.  Defendants argue that to post Plaintiff's requested questions would be to violate the establishment clause of the First Amendment.

In order to avoid violating the establishment clause, a statute or ordinance must satisfy three criteria: "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must

not foster 'an excessive government entanglement with religion.'" Lemon v. Kurtzman, 403 U.S. 602, 612-13 (1971) (internal citations omitted). The Court notes that the first of Plaintiff's proposed referendum questions requires religious prayer in public school, and that the second of the referendum questions requires religious instruction on "the truth and the presence of God as creator." Thus, Plaintiff's proposed referendum questions specifically state religious purposes for their existence, and furthermore seek to advance a specific religion. Because of this, it is inevitable that allowing such referendums to be adopted would lead to excessive government entanglement with religion.

In Sch. Dist. of Abington Twp., Pa. v. Schempp, 374 U.S. 203, 226 (1963), the Supreme Court specifically held two statutes requiring daily prayer and Bible reading in public schools to be unconstitutional. In Epperson v. State of Ark., 393 U.S. 97, 107-109 (1968), the Supreme Court struck down legislation prohibiting instruction on the theory of evolution and requiring instruction on the theory of creationism in public schools. Because the Court finds that Plaintiff's proposed referendum questions are indistinguishable from the school board resolutions in Schempp and Epperson that were specifically found to violate the establishment clause, the Court grants the Defendants' motions to dismiss Plaintiff's claims.

Finally, because Plaintiff's first and second referendum questions explicitly state religious purposes for their existence, it would be futile to allow Plaintiff to amend his Complaint. At this juncture, it is not possible for Plaintiff to plead a secular purpose for the referendum questions. The proposed referendum questions also state as their goal mandatory instruction on the truth of a religion. Therefore, Plaintiff cannot plead that adoption of the referenda would neither advance nor inhibit any religion. Accordingly, the Court will not grant Plaintiff leave to amend the Complaint.

### C. Plaintiff's Equal Protection Claim

Plaintiff next argues that the Camden Board's denial of his petition violates the Equal Protection Clause of the Fourteenth Amendment because it discriminates against Plaintiff based on his religion, race, and political affiliation. As discussed below, the Court finds this claim unconvincing.

The Equal Protection Clause protects similarly situated individuals from unequal treatment under the law. U.S. Const. amend. XIV, § 1; see Kuhar v. Greensburg-Salem School Dist., 616 F.2d 676, 677 (3d Cir. 1980). To state an equal-protection claim, plaintiff must at the very least allege that "he is receiving different treatment from that received by other individuals similarly situated." Pollock v. City of Ocean City, 968 F. Supp. 187, 191 (D.N.J. 1997) (quoting Kuhar v. Greensburg–Salem School Dist., 616 F.2d 676, 677 n. 1 (3d Cir.1980)).

Here Plaintiff alleges that he has been discriminated against due to his race, political party affiliation, and his religion. Furthermore, Plaintiff states that the discrimination against him has led to deprivation of the rights of the children of the Camden City Public School System, since these children are unable to learn about the theory of Intelligent Design or creationism. The Court finds that Plaintiff's allegations fail to state a claim for violation of the equal protection clause. Plaintiff has only alleged discrimination against himself as an individual, while failing to allege that he was treated differently than similarly situated individuals. Furthermore, Plaintiff fails to identify the class, for equal protection purposes, to which the students he is seeking to protect belong. Plaintiff also fails to allege that the students on whose behalf he is bringing his claim have been treated differently than similarly situated students. Finally, the Court notes that education is not a fundamental right for purposes of the equal protection clause. San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 35 (1973)

("Education, of course, is not among the rights afforded explicit protection under our Federal Constitution."). Therefore, the Court dismisses Plaintiff's equal protection claims.

### D. Plaintiff's State Constitutional Claims

Plaintiff further argues that Defendants' conduct has violated Plaintiff's rights to free exercise of religion and equal protection as guaranteed by the New Jersey Constitution. The Court addresses these arguments in turn.

#### 1. Free Exercise of Religion

Article I, Paragraph 3 of the New Jersey constitution provides that "[n]o person shall be deprived of the inestimable privilege of worshipping Almighty God in a manner agreeable to the dictates of his own conscience." N.J. Const. art. I, ¶ 3. Although that provision contains significant textual and historical variations from the First Amendment, see Robert F. Williams, The New Jersey State Constitution 32 (updated ed. 1997), and although the New Jersey Supreme Court has frequently announced that the New Jersey Constitution can provide more expansive protections than the Federal Constitution, see State v. Novembrino, 519 A.2d 820, 849-50 (N.J. 1987), the New Jersey Supreme Court has consistently equated the meaning of Article I, Paragraph 3 with the Supreme Court's interpretation of the First Amendment. See, e.g., State v. Cameron, 498 A.2d 1217, 1127-28 (N.J. 1985); see also Williams, The New Jersey State Constitution 32 (noting that the New Jersey Supreme Court tends to "equate" Article I, Paragraph 3 with the First Amendment).

Here, Plaintiff does not separately defend its claim under Article I, Paragraph 3 of the New Jersey Constitution. Plaintiff cites no authority for the position that Article I, Paragraph 3 provides more expansive protections than the First Amendment. Thus, the Court finds that

Plaintiff's claim under the New Jersey Constitution fails for the same reasons that its First Amendment claim fails.

### 2. Equal Protection

"Unlike its federal counterpart, the New Jersey Constitution does not contain an equal protection clause." State v. Chun, 943 A.2d 114, 142 (N.J. 2008). However, the New Jersey Supreme Court has found that "[a] concept of equal protection is implicit in" the New Jersey Constitution's Due Process guarantee, N.J. Const. art. I, par. 1. McKenney v. Byrne, 412 A.2d 1041, 1047 (N.J. 1980). "Although conceptually similar, the right under the State Constitution can in some situations be broader than the right conferred by the Equal Protection Clause." Doe v. Poritz, 662 A.2d 367, 414 (1995). Moreover, the New Jersey Supreme Court applies a different analysis to equal protection claims under the New Jersey Constitution:

> In considering equal protection-based challenges, we have not followed the traditional equal protection paradigm of the federal courts, which focuses rigidly on the status of a particular protected class or the fundamental nature of the implicated right. Instead, when analyzing equal protection challenges under New Jersey's Constitution, we have applied a balancing test that weighs the nature of the affected right, the extent to which the governmental restriction intrudes upon it, and the public need for the restriction.

Chun, 943 A.2d at 142 (quotation marks and citations omitted).

Applying that standard, the Court finds that Plaintiff fails to state an equal protection violation under the New Jersey Constitution. Although the New Jersey Constitution can provide greater protection than the Federal Constitution, as discussed above, there is no evidence in this case that Defendants discriminated against Plaintiff on the basis of his religion, nationality, or any other basis. There is no indication that Defendants have sought to exclude the proposed referendum questions in order to restrict Plaintiff's freedom or religion or freedom of speech. Rather, as discussed above, Defendants properly concluded that they had no authority to post the

proposed questions on any ballot.  Therefore, the Court dismisses Plaintiff's equal protection claims under the New Jersey Constitution.

### E.  Eleventh Amendment Sovereign Immunity

Finally, the Commissioner of Education and the New Jersey Attorney General argue that they are immune from suit under the Eleventh Amendment.  The Court agrees that the Commissioner and Attorney General are entitled to sovereign immunity.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although the Eleventh Amendment "by its terms does not bar suits against a State by its own citizens, [the Supreme] Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." Edelman v. Jordan, 415 U.S. 651, 662-63 (1974), overruled on other grounds by Will v. Mich. Dep't. of State Police, 491 U.S. 58, 109 (1989). Thus, "'neither a State nor its officials acting in their official capacities' may be sued for monetary relief under § 1983" unless the State has waived its Eleventh Amendment immunity. Hyatt v. County of Passaic, 340 F. App'x. 833, 836 (3d Cir. 2009) (quoting Will, 491 U.S. at 71).  Similarly, neither a State nor its officials acting in their official capacities are subject to suit in federal court for state-law claims unless the State has waived Eleventh Amendment immunity. Beightler v. New Jersey, No. 08-0966, 2008 U.S. Dist. LEXIS 102154, at *6-9 (D.N.J. Dec. 16, 2008); see Raygor v. Regents of the Univ. of Minn., 534 U.S. 533, 540-43 (2002).

"The breadth of state sovereign immunity protects not only states, but expands to protect entities and persons who can show that, even though the State is not the named defendant, 'the

[S]tate is the real, substantial party in interest.'" Bennett v. Atl. City, 288 F. Supp. 2d 675, 679 (D.N.J. 2003) (quoting Ford Motor Co. v. Dep't of Treasury, 323 U.S. 459, 464 (1945), overruled on other grounds by Lapides v. Bd. of Regents, 535 U.S. 613 (2002)).  Courts in this District have held that the New Jersey Attorney General and the Commissioner of Education are immune from suit under the Eleventh Amendment.  See F.P. v. State of New Jersey, 2001 U.S. Dist. LEXIS 25212 (D.N.J. June 28, 2001) (finding Commissioner immune from suit for damages); Watkins v. Attorney General of New Jersey, 2006 U.S. Dist. LEXIS 73075 (D.N.J.October 3, 2006) (finding Attorney General immune from damages claims).  Plaintiff's Complaint states no claim against the Commissioner or Attorney General in their individual capacities.  Therefore, the Court finds the Commissioner and Attorney General to be immune from suit with respect to Plaintiff's claims for monetary damages.

## IV.     CONCLUSION

For the reasons discussed above, the Court grants Defendants' Motions to Dismiss Plaintiff's Complaint.  Furthermore, because the Camden Board does not have authority to provide Plaintiff with his requested relief, see discussion supra Part III.A and III.B, and because the Attorney General and the Commissioner of Education are entitled to sovereign immunity, see discussion supra Part III.E, the Court finds that it would be futile to allow Plaintiff an opportunity to file an Amended Complaint.  Accordingly, the Court dismisses Plaintiff's Complaint.  The Clerk is directed to close the file.


Dated:   6/22/12                                                         /s/ Robert B. Kugler
                                                                                    ROBERT B. KUGLER
                                                                                    United States District Judge